United States District Court
Southern District of Texas
**ENTERED**
December 15, 2020
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERICA TALASEK, | § | |
| *Plaintiff,* | § | |
| | § | |
| V. | § | CIVIL ACTION NO. 4:18-cv-3306 |
| | § | |
| UNUM LIFE INSURANCE COMPANY OF AMERICA, | § | |
| ET AL., | § | |
| *Defendants.* | § | |

## MEMORANDUM AND RECOMMENDATION

This case is governed by the Employment Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA).   The parties dispute whether Plaintiff Erika Talasek is entitled to supplemental life insurance benefits of $300,000 under a group policy sponsored by her deceased husband's employer National Oilwell Varco LP (NOV) and issued by Defendant Unum Life Insurance Company of America (Unum).   Both Unum and NOV have moved for summary judgment.   ECF 83, 85.   Having considered the parties' written submissions, the administrative record, and the law, the Court RECOMMENDS that Unum's and NOV's motions be GRANTED.

## I.    Factual and Procedural Background

The facts in this section are undisputed and supported by the Administrative Record.[1] Plaintiff's husband, Ben Talasek, began working for NOV in 2001.   NOV offered its employees basic and supplemental life insurance as part of an ERISA Plan.   Unum issued the basic and supplemental life insurance group policies offered by the Plan.   NOV was the Plan sponsor and administrator and delegated authority and discretion to Unum to handle all claims and make benefits decisions.

Beginning in 2008, Ben Talasek was covered by the basic life insurance group policy which offered a benefit in the amount of two times his annual earnings.   During the November 2013

---

[1] The Administrative Record is filed as Exhibit B to the Affidavit of Denise Legendre in the Appendix to Unum's Motion for Summary Judgment.   ECF 84.

open enrollment period, Ben elected for the first time the supplemental, also called voluntary, life insurance coverage.   Unlike the basic life insurance, which did not require medical underwriting, the supplemental life insurance required an employee to submit evidence of insurability and obtain approval for coverage by Unum.   On January 2, 2014, Ben submitted an "Evidence of Insurability Form."   On January 18, 2014, Unum sent Ben a letter informing him of an error in his application and the need for additional information.   Around this time, Ben was diagnosed with pancreatic cancer.   Ben called Unum on January 21, 2014 to check on the status of his application and was told about the January 18 letter.   Ben corrected the error on the Evidence of Insurability Form and supplied additional information.   Ben called Unum again on February 12, 2014 to check on the status of the application and was told that the standard turnaround time for a coverage decision was 4-6 weeks.   On March 3, 2014, several weeks after receiving his cancer diagnosis, Ben provided blood and urine samples and basic health history as part of Unum's requirement that he prove insurability prior to approval of coverage.   He did not mention the cancer diagnosis.

The Administrative Record includes a March 6, 2014 letter addressed to Ben (at the same address as the January 18, 2014 letter Ben received) stating that Unum could not approve Ben's application due to abnormal blood test results.   The Administrative Record does not contain any letter approving Ben's application for supplemental life insurance benefits. NOV received notice that Unum did not approve Ben's application for supplemental benefits.   Despite the notice and the statements in the Plan that supplemental life insurance coverage is contingent on approval by Unum, NOV began deducting the increased premiums for supplemental coverage from Ben's paycheck in April 2014 and continued to do so through 2017.   NOV also sent annual benefit confirmation statements to Ben for the years 2014 through 2017 which identified supplemental life insurance coverage as part of his benefits.   Ben passed away from pancreatic cancer on December 24, 2017.

In January 2018, Plaintiff submitted a claim for both basic and supplemental life insurance

benefits under the Plan's group life insurance policy.   Unum approved her claim for basic life insurance benefits in the amount of $135,000 but denied the $300,000 claim for supplemental life insurance benefits.   Unum advised Plaintiff it was denying the claim because it had rejected Ben's application for supplemental life insurance on March 6, 2014 due to the abnormal test results from his required insurability medical examination.   Plaintiff appealed Unum's unfavorable decision on grounds that NOV deducted premiums for supplemental life insurance and sent Ben confirmation statements reflecting the supplemental life insurance coverage was part of his benefits and that Ben never received notice that his application for supplemental coverage was rejected.   Unum did not change its original claim decision.

Plaintiff filed this suit in September 2018 and on April 10, 2019 filed a Second Amended Complaint asserting claims for (1) benefits under ERISA § 502(a)(1)(B); (2) ERISA estoppel; (3) breach of fiduciary duty under ERISA § 502(a)(3)(B); and (4) negligence against NOV.   ECF 16. The Court previously dismissed Plaintiff's breach of fiduciary duty and negligence claims.   ECF 69, 73.   Unum and NOV now move for summary judgment on Plaintiff's ERISA estoppel and §502(a)(1)(B) claims for benefits.

## II.   Procedure for deciding ERISA Claims

The Fifth Circuit recently acknowledged "there is an open question whether it is appropriate to resolve ERISA claims subject to de novo review on summary judgment, or whether the district court should conduct a bench trial."   *Katherine P. v. Humana Health Plan, Inc.*, 959 F.3d 206, 208 (5th Cir. 2020) (citing *Koch v. Metro. Life Ins. Co.*, 425 F. Supp. 3d 741, 746-47 (N.D. Tex. 2019) (surveying authorities).   The Fifth Circuit declined to answer the question because the parties had not raised it but reversed the summary judgment in favor of the defendant and remanded the case for further proceedings due to a genuine issue of material fact precluding summary judgment.   Some Courts have concluded the appropriate procedure for resolving this type of ERISA dispute is to make findings of fact and conclusions of law, consistent with Rule 52,

based on the administrative record and the parties' briefing.  *See Ingerson v. Principal Life Ins. Co.*, Civil Action No. 2:18-cv-227-Z-BR, 2020 WL 3163074, *1 n.3 (N.D. Tex. May 13, 2020) (making recommended findings of fact and conclusions of law pursuant to Rule 52 where parties requested trial on the administrative record and briefing); *O'Hara v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 110, 116 (2d Cir. 2011) (noting a trial on the papers followed by express findings of fact and conclusions of law under Rule 52 is appropriate where it is clear that the parties consent to a bench trial on the parties' submissions);  *Hill v. Hartford Life & Accident Ins. Co.*, 1:08-CV-0754-CC, 2009 WL 10664970, at *1 (N.D. Ga. Sept. 16, 2009) (treating plaintiff's summary judgment motion on his ERISA claims as trial on the papers pursuant to Rule 52).

As in *Katherine P.*, the parties here do not object to having this case decided on motions for summary judgment, and no party has suggested that Rule 52 is the appropriate procedural mechanism for deciding this case.   The parties have submitted this matter to the Court on motions for summary judgment, so the Court has considered the motions under the summary judgment standards of Rule 56.  *See Woods v. Riverbend County Club Inc.*, 320 F. Supp. 3d 901, 909-10 (S.D. Tex. 2019) (granting defendant's motion for summary judgment after de novo review of the administrative record because the fact issues raised by plaintiff were not dispositive); *see also Bunner*, 2020 WL 3493760, at *12-13 (denying summary judgment due to fact issues on Plaintiff's estoppel claim).

Summary judgment is appropriate when the "movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. PRO. 56.  In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *R.L. Inv. Prop., LLC v. Hamm*, 715 F.3d 145, 149 (5th Cir. 2013).

### III.    Motions to Strike Evidence

Next, the Court addresses the parties' Motions to Strike in light of two principles specific to ERISA benefit claims.   First, with only narrow exceptions, the evidence a court may review to decide an ERISA benefits claim is limited to the Administrative Record.   *Estate of Bratton v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 215 F.3d 516, 521 (5th Cir. 2000) ("The plan administrator has the obligation to identify the evidence in the administrative record and the claimant must be afforded a reasonable opportunity to contest whether that record is complete. Once the administrative record has been determined, the district court may not stray from it but for certain limited exceptions"); *see also Soileau & Assocs., LLC v. Louisiana Health Serv. & Indem. Co.*, No. CV 18-710-WBV-JCW, 2020 WL 1969984, at *4 (E.D. La. Apr. 23, 2020) (identifying 5 types of evidence outside the Administrative Record the Fifth Circuit has recognized as exceptions: "(1) evidence related to how an administrator has interpreted terms of the plan in the past; (2) evidence, including expert opinion, that assists the district court in understanding the medical terminology or practice related to a benefits claim; (3) evidence regarding the completeness of the administrative record; (4) evidence regarding whether the plan administrator complied with ERISA's procedural regulations; and (5) evidence regarding the existence and extent of a conflict of interest created by a plan administrator's dual role in making benefits determinations and funding the plan.").   None of the recognized exceptions apply here.   Second, the Federal Rules of Evidence, including the hearsay rule, do not govern the admissibility of, or preclude the court's consideration of, evidence in the Administrative Record.   *Harmon v. Bayer Bus.*, No. CV H-14-1732, 2016 WL 397684, at *10 (S.D. Tex. Jan. 29, 2016) ("[H]earsay objections to documents in an Administrative Record are not valid because a court's review of the administrator's decision is based on the entire Administrative Record.").

Based on the above principals, for purposes of Plaintiff's § 502(a)(1)(B) claim against Unum and NOV all motions to strike (ECF 87, 88, 93, 98) should be granted to the extent they

seek to strike evidence *outside* the Administrative Record filed at ECF 84.   Conversely, all the motions to strike should be denied to the extent they seek to strike evidence contained *within* the Administrative Record, whether for purposes of Plaintiff's § 502(a)(1)(B) claim or the ERISA estoppel claims against Unum and NOV.

The remaining issue with respect to the motions to strike is whether the Court should strike evidence *outside* the Administrative Record for purposes of Plaintiff's ERISA estoppel claim against Unum or NOV.   Unum moves to strike the following evidence that falls into this category: the Declaration of Garret Jackson (ECF 89-8); internal NOV correspondence and correspondence between Plaintiff and NOV related to premium payments (ECF 89-15, 16, 17);   the deposition transcripts of NOV employees Mary Birk Jones and Tonya Kelley (ECF 89-19, 20, 21); and Erika Talasek's August 26, 2020 Declaration attaching tax and student loan information (ECF 89-23-27, 29).   NOV moves to strike the Declaration of Garret Jackson (ECF 89-8).   The evidence in this category that Plaintiff moves to strike is paragraph 7 of the Mary Birk Jones Declaration (ECF 85-3) and paragraph 4 of the Tonya Kelley Declaration (ECF 85-8).

The Fifth Circuit has not addressed whether or under what circumstances evidence outside the administrative record may be considered in the context of an ERISA estoppel claim.   The parties have not cited any Fifth Circuit authority recognizing an ERISA estoppel claim as an exception to the general rule that limits a district court's review of ERISA benefit claims to the administrative record.   Unum argues the Court may review only the Administrative Record when deciding Plaintiff's equitable estoppel claims, citing *Mullica v. Minnesota Life Ins. Co.*, CIV. A. 11-4034, 2013 WL 5429295, at *3 (E.D. Pa. Sept. 27, 2013) and *Bratton v. Schlumberger Tech. Corp. Pension Plan*, No. 06-1747, 2007 WL 3010353, at *406 (W.D. La. Oct. 12, 2007). ECF 93 at 2, n.1.   The decisions in *Mullica* and *Bratton* are based on the rationale that discovery should not be permitted on an ERISA estoppel claim where the plaintiff had an opportunity to establish

the record in support of the claim during the administrative process.[2]   Plaintiff has cited no contrary authority.   *See* ECF 99.   In this case, Plaintiff clearly had the opportunity to establish the record on her ERISA estoppel theory during the claims process and appeal.   *See* ECF 84-3 at 141-175 (Plaintiff Affidavit with attached evidence).   The estoppel claim was also addressed on appeal, at least as it pertains to Unum.   *See Id.* at 193-200 (decision on appeal).   Thus, Unum's motion to strike evidence outside the Administrative Record should be granted for purposes of Plaintiff's ERISA estoppel claim.[3]

But, with respect to the estoppel claim against NOV, Plaintiff and NOV conducted discovery by agreement and neither objects to the Court's consideration of material outside the administrative record for purposes of deciding Plaintiff's ERISA estoppel claim against NOV. *See* ECF 88, 98.   NOV objects to paragraph 6 of the Declaration of Garret Jackson, which is outside the Administrative Record, only because it is hearsay for which there is no exception, it lacks foundation, and it is speculative.[4]   Paragraph 6 of Jackson's Declaration reads:

> Over the next few years, throughout 2014-2017, I had several conversations with Ben at work where he did reference the fact that he had supplemental life insurance through his employment with NOV.   During these conversations, he essentially indicated that he was glad that he had obtained that insurance policy because it would help take care of his family after he was gone.

ECF 89-8.   Although hearsay objections are not valid with respect to evidence in the administrative record, they do apply to evidence that is *outside* the administrative record. *See Harmon,* 2016 WL 397684, at *10 ("In an ERISA case, however, hearsay objections to documents *in an Administrative Record* are not valid because a court's review of the administrator's decision

---

[2]   *Mullica* does not expressly explain this rationale, but relies on *Cramer v. Appalachian Regional Healthcaare, Inc.*, Civil Action No. 5:11-49-KKC, 2012 WL 996583, at * 4 (E.D. Kty 20012), which does.

[3]   As noted above, this ruling applies to the Declaration of Garret Jackson (ECF 89-8); internal NOV correspondence and correspondence between Plaintiff and NOV related to premium payments (ECF 89-15, 16, 17);   the entire transcripts of depositions of NOV employees Mary Birk Jones and Tonya Kelley (ECF 89-19, 20, 21); and Erika Talasek's August 26, 2020 Declaration attaching tax and student loan information (ECF 89-23-27, 29).   However, none of this evidence is dispositive, or even particularly relevant, to Plaintiff's claims against Unum.

[4]   Plaintiff did not respond to NOV's Motion to Strike and under Local Rules 7.3 and 7.4 the Court may deem it unopposed.   Nonetheless, the lack of response is not the basis for the Court decision to strike the Jackson Declaration.

is based on the entire Administrative Record." (emphasis added)).   The Court finds, only for purposes of this Memorandum and Recommendation, that the statements in Paragraph 6 are hearsay and recommends granting NOV's motion to strike Paragraph 6.   However, as explained below, even if the Court denied the Motion to Strike and considered Paragraph 6 as evidence of Ben Talasek's reliance on representations by NOV, Plaintiff still cannot demonstrate all the necessary elements of an ERISA estoppel claim.

Plaintiff, in turn, objects to portions of Mary Birk Jones's Declaration (ECF 85-3) which state NOV "mistakenly released the 'suspended' status hold" for Ben Talasek and that this "mistake" led to an error in premium deductions and to the removal of the "suspended" notation on benefits statements.   Plaintiff also objects to portions of the Declaration of Tonya Kelley (85-8) which state the NOV benefits center "mistakenly released the 'suspended' status hold on the Voluntary Employee Life Insurance coverage for Mr. Talasek without marking the coverage as denied."   However, Plaintiff fails to provide a legal basis for striking these statements in Jones's and Kelley's Declarations.   She contends the statements are contrary to their deposition testimony, but as explained by NOV in response to the motion to strike, the statements are in fact consistent with prior testimony.   The statements reflect the personal knowledge of the affiants obtained from their involvement with the claim and review of NOV business records.   Plaintiff's motion to strike portions of the Jones and Kelley Declarations (ECF 88) should be denied.

In summary, Plaintiff's Motions to Strike (ECF 87, 88) should be denied; Unum's Motion to Strike (ECF 93) should be granted; and NOV's Motion to Strike (ECF 98) should be granted in part and denied in part.   Again, the Court notes the stricken evidence is not dispositive of any issue before the Court and the recommended rulings on the motions to strike do not impact the Court's recommendations on the motions for summary judgment.

IV.   **Analysis**

A.   **Claim for Benefits Under § 502(a)(1)(B)**

1.   **Standard of Review**

The Court must determine the proper standard of review to be applied to Unum's denial of benefits when deciding Plaintiff's § 502(a)(1)(B) benefits claim.   NOV argues that because as Plan administrator, it "delegated to Unum discretionary authority to make benefits determinations," this Court must review Unum's denial of Plaintiff's claim for benefits using an abuse of discretion standard.[5]   *See* ECF 85 at 19.   Plaintiff did not brief the standard of review but appears to assume the abuse of discretion standard applies.   *See* ECF 89 at 8; 18 (stating "the Plan Administrator abused its discretion").   However, Unum, the party whose decision is under review, essentially conceded in its Motion for Summary Judgment that de novo review is required.[6] *See* ECF 83 at 8 (stating that the issue to be decided by the Court is whether Unum's "claim decision was correct.");   *See also, Pike v. Hartford life and Acc. Ins. Co.*, 368 F. Supp.3d 1018, 1030 (E.D. Tex. 2019) (under a de novo standard of review, the Court's task is to determine whether the administrator made a correct decision); *Ingerson v. Principal Life Ins. Co.*, Civil Action No. 2:18-cv-227-Z-BR, 2020 WL 3163074, *8 (N.D. Tex. May 13, 2020) (same).

Generally, if the plan at issue lawfully delegates discretionary authority to a plan administrator, the Court's review is limited to determining whether the plan administrator abused that discretion.   *Bunner v. Dearborn Nat'l Life Ins. Co.*, No. CV H-18-1820, 2020 WL 3493760, at *7 (S.D. Tex. May 26, 2020), report and recommendation adopted, No. CV H-18-1820, 2020 WL 3490611 (S.D. Tex. June 26, 2020) (citing *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018).   If the ERISA plan does not have a valid delegation clause, the

---

[5]  NOV does not cite *Ariana M. v. Humana Health Plan of Tex., Inc.*, 884 F.3d 246, 247 (5th Cir. 2018) or other current authority on this issue.
[6]  Unum changed its tune in its Reply, seeking to hold Plaintiff to her concession that abuse of discretion is the proper standard.   ECF 92 at 5 n.1.

Court's review is de novo for both legal and factual determinations. *Id.*

  The Plan Summary of Benefits in this case contains a discretionary clause.[7]   ECF 84-1 at

75.   However, Texas law prohibits insurers from using discretionary clauses. *See Bunner*, 2020

WL 3493760, at *7 (citing TEX. INS. CODE § 1701.062(a); TEX. ADMIN. CODE § 3.1203); *Woods*

*v. Riverbend Country Club, Inc.*, 320 F. Supp. 3d 901, 909 (S.D. Tex. 2018).   The Fifth Circuit

has not ruled definitively on whether ERISA pre-empts Texas's anti-delegation statute. *See*

*Ariana M.*, 884 F.3d at 250 and n.2 (declining to address preemption but noting that "[e]ach court

to decide this issue has concluded that ERISA does not preempt state anti-delegation statutes");

*Rittinger v. Healthy All. Life Ins. Co.*, 914 F.3d 952, 955 (5th Cir. 2019) (declining to address

preemption because "even though Texas Insurance Code § 1701.062 bans insurers' use of

delegation clauses in Texas, Missouri law governs this case").   In the absence of clear guidance,

district courts within the Fifth Circuit have differed in their approach to the pre-emption issue.

*Compare Bunner*, 2020 WL 3493760, at *7 (applying de novo review in light of Texas law) *with*

*Experience Infusion Centers, LLC v. Wilsonart, LLC,* No. 4:19-CV-868, 2020 WL 6365528, at *2

(S.D. Tex. Sept. 9, 2020) (applying abuse of discretion review where the parties did not dispute

that the policy vested Plan Administrator with discretion); *see also Lebron v. Boeing Co.*, No. CV

H-18-3935, 2020 WL 444428, at *2 (S.D. Tex. Jan. 13, 2020), report and recommendation adopted

sub nom. *Lebron v. Boeing Co. Employee Health & Welfare Plan*, No. 4:18-CV-3935, 2020 WL

430964 (S.D. Tex. Jan. 28, 2020) (applying a de novo standard of review "because the validity or

lawfulness of the delegation cannot be determined on this record, and because the courts that have

---

[7] DISCRETIONARY ACTS
  The Plan, acting through the Plan Administrator, delegates to Unum and its affiliate Unum Group discretionary authority to make benefit determinations under the Plan. Unum and Unum Group may act directly or through their employees and agents or further delegate their authority through contracts, letters or other documentation or procedures to other affiliates, persons or entities. Benefit determinations include determining eligibility for benefits and the amount of any benefits, resolving factual disputes, and interpreting and enforcing the provisions of the Plan. All benefit determinations must be reasonable and based on the terms of the Plan and the facts and circumstances of each claim.

considered the applicability of section 1701.062 of the Texas Insurance Code have found that it does render a delegation of discretionary authority unenforceable.).

The Court makes no finding as to whether Texas law applies in this case, but will apply the de novo standard of review to Unum's denial of benefits in this case because (i) Unum essentially conceded in its motion for summary judgment that de novo review applies; (ii) no party has established that the delegation clause recited above is "valid;" and (iii) in this particular case, the Court's decision on the motions for summary judgment would be the same under either standard.

### 2.   Unum's Benefits Decision Was Correct

Unum received Plaintiff's claim for life insurance benefits on January 22, 2018.   ECF 84-2 at 2.   The claim form indicated that Ben Talasek was hired by NOV on April 23, 2001, last worked on December 23, 2017, paid premiums through December 31, 2017, had an annual salary of $70,695.33, and died on December 24, 2017.[8]   *Id.* at 29.   Plaintiff's claim sought basic life benefits of $142,000 and supplemental, or voluntary, life benefits of $300,000.   *Id.*   Unum promptly confirmed receipt of the claim and asked Plaintiff to return a copy of the death certificate. *Id.* at 23.   Unum also immediately notified NOV of the claim and asked for information to support the claim.   *Id.* at 18.   Very shortly thereafter, Unum discovered in its files an adverse decision letter dated March 6, 2014.   *Id.* at 11.   Unum again contacted NOV and asked for any information that showed Unum's approval of supplemental coverage.   *Id.*   NOV responded that its records show Ben Talasek elected $300,000 supplemental benefits as of January 1, 2014 and provided payroll information showing payroll premium deductions beginning in April 2014.   *Id.* at 10, 141. NOV could not provide any information showing that Unum approved coverage.   *Id.* at 178. However, a screen shot from NOV's human resources program shows the status of Ben's application as "Declined" as of 03/06/2014.   *Id.* at 123.

---

[8] Unum later confirmed that Ben's last day of work was August 17, 2017 and he received a pay raise after that date. ECF 84-2 at 185, 188.   His salary as of his last day of work was used to calculate basic life benefits and that decision is not at issue here.

In light of Plaintiff's belief that supplemental life insurance coverage began in January 2014 despite Unum's inability to locate any evidence in its own or NOV's files showing Ben had been approved for supplemental life insurance coverage, Unum's claims handler reached out to Unum's National Client Manager for assistance.   ECF 84-2 at 177.   The National Client Manager confirmed that NOV received notification from Unum in March 2014 that Ben's supplemental coverage was declined.   ECF 84-3 at 8.   Also, an "action report" in the claims file shows that Ben's application for $300,000 in supplemental coverage was declined as of March 6, 2014.   *Id.* at 22.

Plaintiff contacted Unum for a status update several times while the claim was pending and was told that the claim was still under review.   *Id.* at 23, 47.   On March 8, 2018, Unum informed Plaintiff that while basic benefits would be released soon, the claim for supplemental benefits was still under review because Unum's records showed that supplemental life insurance coverage was declined based on Ben's medical history.   *Id.* at 78.   Plaintiff expressed concern because Ben had paid premiums for the coverage and received benefit confirmation statements from NOV.   *Id.*   In a March 13, 2018 letter, Unum notified Plaintiff that it was unable to approve her claim for supplemental life insurance benefits because it had not approved the January 2, 2014 Evidence of Insurability form submitted by Ben and therefore he was not covered by the supplemental life insurance policy at the time of his death.   *Id.* at 97-100.

Plaintiff appealed Unum's unfavorable decision on June 19, 2018.   *Id.* at 138-40. Plaintiff argued that Ben was covered for $300,000 in supplemental life insurance because:  (i) premiums for the coverage were deducted from his paychecks beginning in April, 2014; (ii) benefits confirmation statements from 2013, 2014, 2015, 2016, and 2017 show he was enrolled in the voluntary employee life plan; and (iii) neither Ben nor Plaintiff received the March 6, 2014 denial letter.   *Id.*   Plaintiff supported the appeal with her Affidavit attaching the benefit confirmation statements, payroll records, and statements from friends saying Ben had told them

how happy he was to have insurance for his family.   *Id.* at 141-175.   Her Affidavit confirmed

that Ben was diagnosed with pancreatic cancer in January 2014.   *Id.* at 141.

Records from medical underwriting regarding Ben's 2014 application for supplemental life

insurance show that Ben first submitted the required Evidence of Insurability Form at 11:58 p.m.

on January 2, 2014.   ECF 84-2 at 132.   The form incorrectly listed Ben's name where it should

have listed his spouse's name.   ECF 84-2 at 127.   It also shows Ben answered "no" in response

to whether he had received medical advice or sought treatment for cancer or gastrointestinal issues

in the past 7 years.   ECF 84-2 at 127-129.   On January 21, 2014 Ben called Unum to check on

the status of his application on and was told to correct the spousal information and resubmit the

form.   ECF 84-3 at 118.   Ben returned a corrected form, signed by himself and Plaintiff, on

January 28, 2014.   Ben again called to check the status of his application on February 13, 2014

and was told the standard turnaround time for a decision was 4-6 weeks.   *Id.* at 119.   On March

3, 2014 Ben gave blood and urine samples as part of the exam for evidence of insurability.   *Id.* at

186.   Lab results from these samples showed multiple abnormalities.   *Id.* at 188-90.   Notes

created for appeal by medical underwriting indicate Ben's medical records show an office visit

with an oncologist on January 20, 2014 and that appointments with an oncologist usually occur

after a referral from another physician.   *Id.* at 207.   The notes confirm that Ben did not reveal his

cancer diagnosis to Unum at any time during the medical underwriting process which spanned the

period from January 2, 2014 through March 3, 2014.   *Id.*   After his March 3, 2014 exam, Ben

never called Unum to check on the status of his application.   The record contains no statement

from Unum approving Ben's application for supplemental life insurance benefits.   Unum issued

a decision upholding its claim decision on July 12, 2018.   *Id.* at 193-200.

Plaintiff makes three arguments in this Court for why Unum's decision is not correct.

First, Plaintiff argues Unum failed to "take action" within two years of inception of coverage for

alleged misrepresentations in Ben's application.   Plaintiff cites the following provision of the

group policy in support of this position:

> HOW CAN STATEMENTS MADE IN YOUR APPLICATION FOR THIS COVERAGE BE USED?
> Unum considers any material statements you or your Employer make in signed application for coverage or an evidence of insurability form a representation and not a warranty. If any of the material statements you or your Employer make or not complete and/or not true at the time they are made, we can:
> - reduce or deny any claim; or
> - cancel your coverage from the effective date.
> ***
> Except in cases of fraud, Unum can take action only in the first 2 years coverage is in force.

ECF 84-1 at 39.   This provision is inapplicable because the supplemental life insurance coverage was never in force and Unum did not deny Plaintiff's claim based on misstatements in Ben's application.

Second, Plaintiff argues that Unum's acceptance of the premiums for supplemental life insurance which were deducted from Ben's paychecks and sent to Unum by NOV creates coverage.   The Fifth Circuit has rejected the argument that the payment of premiums can create coverage that otherwise does not exist. *See Amschwand v. Spherion Corp.*, 505 F.3d 342, 344 (5th Cir. 2007) (widow of employee who "timely paid the basic and supplemental life insurance premiums while on disability leave until his death" not entitled to benefits), *overruled on other grounds by Gearlds v. Entergy Services, Inc*., 709 F.3d 448, 452 (5th Cir.2013); *Sanborn-Alder v. Cigna Grp. Ins*., 771 F. Supp. 2d 713, 728 (S.D. Tex. 2011) ("payment of premiums [did not] create coverage under the plan where coverage did not exist under the terms of the plan or the policy").   *Khan v. Am. Int'l Grp., Inc*., 654 F. Supp. 2d 617, 630 (S.D. Tex. 2009) ("In numerous cases, courts have upheld the denial of benefits under a policy despite the defendants' acceptance of premiums for that policy." (citations omitted)).

Third, Plaintiff contends that she is entitled to benefits because she and Ben never received the March 6, 2014 letter.   Even if Plaintiff could demonstrate she and Ben did not receive the

denial letter,[9] she still would not be entitled to benefits because nothing in the record demonstrates that Unum *approved* Ben's Evidence of Insurability Form as required by the policy.  Without such approval, the supplemental life insurance coverage for which Ben applied during open enrollment never began.   The language of the policy makes clear that coverage applied for during an annual enrollment period begins on the later of the first day of the next plan year or the date Unum approves the evidence of insurability form:

> Group 1
> This plan provides additional benefits in addition to the basic benefit. When you first become eligible for coverage, you may apply for any number of benefit units, however, you cannot be covered for more than the maximum benefit available under the plan.
>
>    ***
>
> If you do not apply for additional benefits on or before the 31st day after your eligibility date, you can only apply at the next annual enrollment period or within 31 days of a change in status. Evidence of insurability is required for any amount of life insurance. Evidence of insurability is not required for accidental death and dismemberment insurance.
>
> Coverage applied for during an annual enrollment period will begin at 12:01 a.m. on the later of:
> - the first day of the next plan year; or
> - the date Unum approves your evidence of insurability form for life insurance.
>
> ***
>
> EVIDENCE OF INSURABILITY means a statement of your or your dependent's medical history which Unum will use to determine if you or your dependent is approved for coverage. Evidence of insurability will be at Unum's expense.

ECF 84-1 at 28-29, 61.   In addition, other evidence in the record besides the March 6, 2014 letter demonstrates that Unum did not approve Ben's application for supplemental coverage — the denial was noted on NOV's human resources reports, and in the notes of medical underwriting. *See* ECF 84-3 at 8, 22, 207.

      Based on a de novo review of the Administrative Record, the Court concludes that Unum's

---

[9] Despite her whole-hearted belief that Ben would have told her about the letter, Plaintiff has no proof that Ben never received it.

decision to deny Plaintiff's claims for $300,000 in supplemental life insurance benefits was correct.

### B.   Claim for Benefits Based on ERISA Estoppel

The Fifth Circuit first recognized ERISA estoppel as a cognizable legal theory in *Mello v. Sara Lee Corp.*, 431 F.3d 440, 444–45 (5th Cir. 2005).   The elements of ERISA estoppel are: (1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances.   *Id.*   The parties in this case do not address whether the administrative record should be reviewed de novo or for abuse of discretion for purposes of the ERISA estoppel claim.   *Mello* supports de novo review.   431 F.3d at 444 ("Because Mello's estoppel claim is not a review of a decision of the Committee, the district court properly exercised *de novo* review.").   Hence, the Court reviews the administrative record de novo when analyzing Plaintiff's ERISA estoppel claims.

#### 1.   Plaintiff cannot demonstrate a material misrepresentation by Unum.

Material misrepresentations contained in informal documents such as benefits statements can support a claim for ERISA estoppel.   *Id.* at 445.   "A misrepresentation is 'material' if there is a substantial likelihood that it would mislead a reasonable employee in making an adequately informed decision."   *Id.* On the other hand, a failure to disclose information, particularly if not done with intent to deceive, is not a "material misrepresentation" giving rise to an ERISA estoppel claim.   *Khan v. American Intern. Group, Inc.*, 654 F. Supp. 2d 617, 629 (S.D. Tex. 2009) (citing *Burstein v. Ret. Account Plan for Emps. of Allegheny Health Education and Research Found.*, 334 F.3d 365, 383 (3d Cir. 2003) for the proposition that ERISA reporting errors or disclosure violations do not support an ERISA estoppel claim).

Plaintiff cannot point to a material misrepresentation made by Unum and therefore cannot demonstrate the first required element of ERISA estoppel as to Unum.   Unum never misrepresented to Ben that the evidence of insurability requirement did not apply to him or that he

16

was approved for supplemental life insurance benefits.   NOV's actions, such as providing erroneous annual benefits confirmation statements and making erroneous payroll deductions for premiums, cannot be attributed to Unum because the policy expressly prevents NOV from acting as an agent for Unum. ECF 84-1 at 40.   ("Under no circumstances will your Employer be deemed the agent of Unum.").   Because Plaintiff cannot demonstrate a misrepresentation by Unum, summary judgment should be granted on Plaintiff's ERISA estoppel claim against Unum.

### 2.   Plaintiff cannot demonstrate reasonable reliance.

The second element of ERISA estoppel requires reliance on a material misrepresentation that is both detrimental and reasonable.   *Id.*   Because an ERISA plan cannot be modified by oral or informal communications, an employee cannot *reasonably* rely on material misrepresentations contained in informal documents if the unambiguous terms of the plan or policy refute entitlement to benefits.   *Id.* at 446-47; s*ee also High v. E-Sys. Inc.*, 459 F.3d 573, 580 (5th Cir. 2006) ("High cannot reasonably rely on the actual receipt of disability benefits when the policy itself details that such reliance is unreasonable.");   *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 375 (5th Cir. 2008) ("[T]here can be no 'reasonable reliance on informal documents in the face of unambiguous Plan terms'").

As to NOV, Plaintiff cannot meet her burden as to the second element of an ERISA estoppel claim.   Plaintiff has presented a genuine issue of material fact regarding detrimental reliance but cannot show that the reliance was reasonable.[10]   Under the terms of the group supplemental life insurance policy, Ben was required to submit Evidence of Insurability in support of his application, and Unum coverage would begin only after Unum approved the Evidence of Insurability form.   ECF 84-1 at 28-29, 61.   In light of the policy requirements, it was not reasonable for Ben and Plaintiff to rely on NOV's conduct in deducting premiums and sending

---

[10]   The Affidavit of Garrett Jackson, ECF 89-8, if considered as proper evidence, is evidence only of Ben's detrimental reliance; it is not evidence that Ben's reliance was reasonable.

benefit confirmation statements as supplemental life insurance coverage. For example, in *Sanborn-Alder v. Cigna Grp. Ins.*, 771 F. Supp. 2d 713, 731 (S.D. Tex. 2011), Sanborn-Alder sued to recover benefits she believed she was due under her deceased husband's voluntary life insurance policy. The insurer denied her claim, stating that the certificate of insurance issued to her husband indicating $400,000 in supplemental life insurance coverage was issued in error. *Id.* at 722-23. Sanborn-Alder alleged that she and her husband relied to their detriment on the certificate of insurance when they let other insurance lapse and made premium payments for over two and a half years. *Id.* The court ruled that reliance on the certificate of insurance was not reasonable because the husband was not eligible for supplemental coverage under the terms of the plan and policy. *Id.* at 431. Likewise, reliance on NOV's payroll deductions and benefit statements was not reasonable in light of the requirement in the policy that Unum approve the Evidence of Insurability form before coverage would begin. In addition, the 2016 Benefits Confirmation Statement sent by NOV gave further notice to Ben and Plaintiff that regardless of the elections reflected in the statement, "Insurance company approval through the Evidence of Insurability (EOI) process must be granted for these benefits before coverage and deductions can begin." ECF 84-3 at 152.

The facts of this case make reliance on NOV's representations particularly unreasonable. Ben and Plaintiff knew he had cancer before he submitted the signed and corrected Evidence of Insurability Form on January 28, 2014 on which he failed to give honest answers about his medical history. Ben also knew his application for supplemental life insurance had to be approved by Unum because he called to inquire about the status of the approval during January and February 2014, and was told the underwriting decision usually took between four and six weeks. He also submitted to a paramedical examination and gave blood and urine samples for the Evidence of Insurability on March 3, 2014. Yet, after early March 2014 he never again inquired of Unum about the status of his application. These case-specific facts, in addition to the policy language,

prevent reliance on the deduction of premiums and annual benefit statements from being reasonable.

### 3.   Plaintiff cannot demonstrate extraordinary circumstances.

The third required element of ERISA estoppel, "extraordinary circumstances," generally requires "(1) acts of bad faith; (2) attempts to actively conceal a significant change in the plan; (3) the commission of fraud; (4) circumstances where a plaintiff repeatedly and diligently inquired about benefits and was repeatedly misled; or (5) an especially vulnerable plaintiff."   *Brown v. Aetna Life Ins. Co.*, 975 F. Supp. 2d 610, 625-26 (W.D. Tex. 2013).   Thus, mistakes or oversights do not constitute extraordinary circumstances, but "acts of bad faith on the part of the employer, attempts to actively conceal a significant change in the plan, or the commission of fraud" can evidence extraordinary circumstances.   *See Khan*, 654 F. Supp. 2d at 629 (quoting *Burstein*, 334 F.3d at 383 and citing *High*, 459 F.3d at 580 n.3); *see also Nicholas v. KBR, Inc.*, No. CV H-07-0657, 2010 WL 11531123, at *16 (S.D. Tex. Aug. 24, 2010), aff'd, 427 F. App'x 371 (5th Cir. 2011).

Although Ben's death from cancer at a young age and his family's loss of a husband, father and breadwinner are tragic, no "extraordinary circumstances" warrant an award of damages based on ERISA estoppel.   *See Nicholas*, 2010 WL 11531123, at *16-17 (describing cases in which courts have declined to find extraordinary circumstances absent fraud or an intent to deceive and failing to find extraordinary circumstances where widow was denied life insurance benefits).   The evidence does not support a finding that NOV intentionally collected excessive premiums from Ben Talasek or sent him inaccurate benefits statements in bad faith.[11]   NOV remitted the premiums to Unum and did not profit from its error.   The Third Circuit in *Gridley v. Cleveland Pneumatic Co.*, 924 F.2d 1310, 1319 (3d Cir. 1991) addressed a similar situation.   In *Gridley*, the

---

[11] Even ignoring the testimony of NOV representatives to which Plaintiff objected (ECF 88), and which claims "human error" or mistaken data entry, the record fails to demonstrate bad faith by NOV.

plaintiff asserted an equitable estoppel claim seeking increased death benefits due under an amendment to her husband's group policy that took effect after he ceased working due to terminal cancer.   *Id.* at 1311.   Her claim was denied on the grounds that only employees actively working at the time of the amendment were entitled to increased benefits.   *Id.*   Plaintiff argued she reasonably relied on misrepresentations in a plan brochure that did not include the "actively at work" requirement, and on the fact that after she returned a card indicating she wanted the higher benefit, defendant began deducting the increased premiums associated with the higher benefit.   *Id.* at 1314-15.   The *Gridley* Court concluded these facts did not constitute "extraordinary circumstances" for purposes of ERISA estoppel.   *Id.* at 1319.   *See also Sandborn*-Alder, 771 F. Supp. 2d at 731 (widow whose husband relied on issuance of certificate of insurance and collection of premium payments by insurer could not show extraordinary circumstances because a she had no evidence that insurer or employer acted in bad faith, concealed plan changes, or committed fraud).

Plaintiff also argues she is an "especially vulnerable plaintiff," comparing herself to the plaintiff in *Bunner*, 2020 WL 3493760, at *12-13.   The comparison is inapt.   Plaintiff Bunner, who was also the insured employee under her employer's ERISA plan, was a "single woman solely responsible for her own care and support" who "was already experiencing cognitive decline at the time of the relevant misrepresentations were made."   *Id.*   Plaintiff does not allege or present evidence that she or Ben were suffering from cognitive decline at the time of the alleged misrepresentations or their alleged reliance on them.

Because Plaintiff cannot create a genuine issue of material fact as to each element of an ERISA estoppel claim against Unum or NOV, the Court recommends that their motions for summary judgment on Plaintiff's ERISA estoppel claim be granted.

### C.  Return of Premiums

The pending motions for summary judgment do not resolve Plaintiff's claim for a refund of the premiums erroneously deducted from Ben's paychecks.   Unum represents that it has instructed NOV to refund Plaintiff the premiums that were paid for the additional coverage.   ECF 83 at 15 n.7.   NOV represents that Unum has not returned the money NOV submitted in error, but nonetheless it offered to refund the premiums to Plaintiff if she completed and returned a W-9 tax form.   Plaintiff refused to provide the requested W-9.   NOV obtained a completed form W-9 from another case handled by her counsel and issued a check payable to counsel on behalf of Plaintiff.   ECF 85 at 17 and n.7.

Plaintiff objects to NOV's attempts to refund the premiums on four grounds: (1) the refund should come from Unum; (2) the refund must include interest; (3) payment to counsel on behalf of Plaintiff is not equivalent to payment directly to Plaintiff; and (4) NOV assumed payment should be paid to Plaintiff instead of Ben's estate.   ECF 89 at 24.

The current record is insufficient for the Court to recommend entry of judgment on the return of the premiums.   If the recommendations herein are adopted by the District Court, Plaintiff must file a motion for judgment seeking an award of premiums and presenting authority for her four positions listed above.   Defendants will then have an opportunity to respond before final judgment will be entered in this case.

### V.      Conclusion and Recommendation

For the reasons discussed above, the Court RECOMMENDS that Plaintiff's Motions to Strike (ECF 87, 88) be DENIED, Unum's Motion to Strike (ECF 93) be GRANTED, and NOV's Motion to Strike (ECF 98) be GRANTED IN PART and DENIED IN PART as specifically set forth above.

The Court further RECOMMENDS that Unum's and NOV's Motions for Summary Judgment (ECF 83, 85) be GRANTED, and that Plaintiff be ordered promptly to file a motion for

judgment awarding a return of premiums paid in error.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c).   Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on December 15, 2020, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge